HUGH WOOD *et al.* Appellees, *vs.* THOMAS J. WOOD, Appellant.

*Opinion filed April 23, 1914.*

1. WILLS—*when conversation in presence of testator cannot be proved.* In a proceeding by heirs to contest a will, the person whose name is written in the will as the legal heir of both real and personal property cannot testify to an alleged conversation between him and the girl who, in the testator's presence, was writing the will, wherein he told her she was not writing all the testator said, which she admitted but said she did not know how to write it, whereupon he dictated, while she wrote, the sentence naming him as the legal heir of the real and personal property.

2. SAME—*when it is not error to permit witnesses to a will to testify on contest.* Where the only issue before the jury in a will contest case is whether certain words were written in the will after it was executed by the testator, subscribing witnesses who made affidavits of the execution of the will when it was probated may testify whether such words were in the will when executed.

3. SAME—*court of equity may hold part of will to be the will of the testator.* A court of equity, in a proceeding to contest a will which it is claimed contains words interpolated by a third person after its execution, has power to determine that the will, as to such words, is not the will of the testator but that the remainder of the instrument, with such words eliminated, is his will.

APPEAL from the Circuit Court of Randolph county; the Hon. GEORGE A. CROW, Judge, presiding.

WISE, KEEFE & WHEELER, (A. E. CRISLER, of counsel,) for appellant.

H. CLAY HORNER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

William Wood, Sr., died in Randolph county February 23, 1910. He left no widow and no child or descendant of a child surviving him. He left a sister, who has since deceased, and a large number of nephews and nieces, as his heirs-at-law. During his last illness, and just before his death, he executed a paper purporting to be his will, in and by which he bequeathed four relatives one dollar each, two others $200 each, another $100, and Thomas Wood $300. The testator owned a farm of 160 acres and from $10,000 to $15,000 worth of personal property. The will directed that the farm should not be sold within three years, and that during that time William Wood and family, who were living with the testator, should have the use of the farm and home free. Appellant, Thomas J. Wood, a nephew of William Wood, Sr., was named as executor, and the will directed that the personal property be controlled and distributed by him. The will was admitted to probate, and afterwards appellees filed the bill in this case to contest the will, or certain parts of it. We have been furnished a photographic copy of the will, which shows the will is in the handwriting of three different persons. It bears date of February 23, but the evidence shows the first part of it was written about eleven o'clock in the night of February 22. The first part of the will is in the handwriting of Mary Wood, who is the daughter of William Wood, a grand-nephew of the testator. This William Wood and family were living with the testator on his farm, as before stated. Mary Wood, her sister, Sarah, and appellant, Thomas J. Wood, were with the testator the night before his death, and about eleven o'clock at night appellant called Mary Wood to the testator's bedside and said his uncle desired to make a will. Appellant asked Mary Wood to write it. She replied she did not know how, and he dictated to her the date and told her how to begin it. Appellant then left the room and Mary Wood wrote a few lines of the

will, giving four persons one dollar each.   The testator was very low with pneumonia and complained of being tired and said he would postpone the completion of the will to a later time.   Mary Wood left the paper in the room where the testator was and nothing further was written until the next morning, when Dr. Boynton, the attending physician, came.   The testator desired to complete the will, and Dr. Boynton testified he was so low he had to be kept up with stimulants until it could be completed.   Dr. Boynton wrote the remainder of the will.   It was signed by the testator by a mark and witnessed by Dr. Boynton, William Wood, and his daughter, Sarah F. Wood.   The will is very short and is in the following form:

*February 23rd 1910*
*My last will and Testament,*

        *It  is  my  will  that* {*Jeanie  Hannah  gets* ~~$X$~~ *1  dollar*
*Thos J Wood* ~~is my~~ *legal* ~~heir~~    =   { *Katie  Wood*     ~~=~~     *1*    =
*both* ~~real and~~ *personal*    =   { *John  Hannah*     =     *1*    =
        = = =    =     =   *Agnes  Wood*     =     *1*    =
        = = =    =     =   *the  farm  shall  not  be  sold  under*
*three  years,  that  William  Wood  &  family  are  to  have the  priveledges  of  the  farm  &  house  for  these  three  years,  free. The  personal  property,  consisting  of  bonds,  notes  and  mortgages  are be  controlled  &  distributed  by  the  administrator,  Thos.  J.  Wood*

        *Give  to  Maggie  Steele,  Niece,  two  hundred  dollars,  $200.00*
        *"    "  Hugh  Wood,  Nephew,  two  hundred  dollars,  200.00*
        *"    "  Thos.  Wood  Nephew,  three  hundred  dollars,  300.00*
        *"    "  Wm.  H.  Wood,  Nephew,  one  hundred  dollars,  100.00*

*Witness C. O. Boynton*                               *his*
        *William Wood*     *Sarah F. Wood*      *William* **X** *Wood*
                                                  *mark*

The following part of the instrument is in the handwriting of Mary Wood:

*February 23rd 1910*
*My last will and Testament,*

        *It  is  my  will  that* { *Jeanie  Hannah  gets* ~~$X$~~ *1  dollar*
        = = =    =     =   { *Katie  Wood*     =     *1*    =
        = = =    =     =   { *John  Hannah*     =     *1*    =
        = = =    =     =   *Agnes  Wood*     =     *1*    =

Commencing with "the farm shall not be sold," etc., the remainder is in the handwriting of Dr. Boynton. The words, "Thos J Wood is my legal heir both real and personel," written in the upper left-hand corner, are in the handwriting of Sarah Wood. The bill alleged that these latter words were not a part of the purported will at the time it was attempted to be executed, but that said words were written on the paper after the death of the testator and before it was admitted to probate, and were not a part, in law, of said paper. The bill further alleged that the will was not executed by the deceased in the manner and form required by law. The bill prayed that the language, "Thos J Wood is my legal heir both real and personel," be decreed not a portion of the paper purporting to be the will of the testator and that the will be declared null and void because not executed in the manner and form required by law. Appellant answered the bill denying all its material allegations. A hearing was had, and the jury returned a verdict "that the language, 'Thos J Wood is my legal heir both real and personel,' is not the last will and testament of William Wood, deceased." The court overruled a motion for a new trial and entered a decree that the language above quoted was not the last will and testament of the testator but that all the remainder of the paper was his last will and testament. From that decree this appeal is prosecuted.

The proof shows that a lawyer by the name of Goddard, residing at Sparta, some two or three miles distant from the testator's home, was sent for by someone to come to the testator's house for the purpose of preparing his will. Goddard came the day of testator's death but after the will had been prepared and executed. The will was given to Goddard, and after looking it over he stepped to the bedside of the testator and told him he had not disposed of all his property by the will. The testator was very near death and replied he would complete it when he got better.

He died immediately afterwards. Goddard took the will to his office and kept it for a few days and then delivered it to appellant. Goddard testified the words alleged to have been written in the will after the testator's death were not in the will when he delivered it to appellant. Sarah Wood, a sister of the Mary Wood who wrote the first part of the will, testified appellant came to their home on the testator's farm on Wednesday night, one week after the death of the testator, and said he wanted one of the girls to write something for him. He asked for Mary Wood, but she was not at home. He then requested Sarah to write, and she wrote, "Thos J Wood is my legal heir both real and personel." She testified the paper was folded in such manner that she did not know what it was she was writing on. After she wrote the words appellant requested her to write he put the paper in his pocket. The proof clearly shows those words are in the handwriting of Sarah Wood. John Meyer, who appears to have sustained rather intimate relations with the testator and thought he might be one of the beneficiaries in the will, testified he read the will in Goddard's office two or three days after the testator's death, and that if the words alleged to have been interpolated were in the will at that time he did not see them. Dr. Boynton, who wrote a part of the will just before the testator died, testified he did not remember seeing those words in the will. There was further testimony strongly supporting the allegation of the bill that the words referred to were not in the will when it was executed. The will itself bears strong evidence that those words were interpolated after the paper was executed, in the manner Sarah Wood testified they were. In that part of the will written by Mary Wood the night before the testator's death, the line, "It is my will that Jeanie Hannah gets· 1 dollar," begins well toward the left side of the paper, which brings the name "Jeanie Hannah" to the right of the middle of the sheet. The names "Katie Wood," "John Hannah" and "Agnes

Wood" are written directly beneath the name "Jeanie Hannah," leaving the left half of the paper opposite their names blank. Under each of the words, "It is my will that," are ditto marks on the lines on which the names "Katie Wood," "John Hannah" and "Agnes Wood" are written. Evidently it was the purpose of Mary Wood to avoid writing before the name of each of the persons given one dollar, "It is my will that," and instead of writing those words, under each of them ditto marks were made. "Thos J Wood is my legal heir both real and personel" was written over the ditto marks on two of these lines, and said marks are plainly visible through the writing. The proof overwhelmingly shows those words were not in the will when it was executed by the testator. The appellant denied having the words written in the will after the testator's death. He denied Sarah Wood's statement about her writing those words at his request, and denied he was at the Wood home at the time Sarah Wood testified he was there and had her do the writing. Appellant's home is in Pennsylvania, and he testified he left St. Louis the evening Sarah Wood said she did the writing for him, for his home. In this he must have been mistaken, for the affidavit to the petition for probate of the will purports to have been made by appellant on the day following the evening Sarah Wood said he was at their house.

Counsel offered to prove by appellant that while Mary Wood was writing the first part of the will appellant told her she was not writing all that testator told her to write; that the testator told her to write that he (appellant) was to heir his real and personal property, and that Mary Wood said she knew that but did not know how to write it, whereupon appellant dictated the words, "Thos J Wood is my legal heir both real and personel," and the words were then written, after which the paper was laid away and the will remained unfinished until Dr. Boynton came the next morning. The court sustained appellees' objection to this offered

testimony, and we think properly so. Under section 2 of the chapter on evidence and depositions appellant was not competent to testify to the matters proposed to be proved. There are certain exceptions to the incompetency established by section 2, but the offered testimony does not come within any of the exceptions. If the conversation proposed to be proven had not occurred in the presence of the testator it would have been competent under the fourth exception, but as it occurred in his presence it was incompetent. But if it had been admitted as competent it could not have changed the result.

It is also insisted that the witnesses to the will, who made affidavits of its execution on the application to admit it to probate, were not competent and should not have been permitted to testify to the interpolation of words in the will after its execution. No attempt appears to have been made on the trial to prove the allegation of the bill that the will was not the will of the testator, but the proof was confined to the issue whether certain words had been written in the instrument after the execution of the same. By agreement of the parties the court instructed the jury orally, and in said instructions stated the issue to be determined by the jury was whether the words, "Thos J Wood is my legal heir both real and personel," were written on the paper after it had been executed by the testator; that in all other respects the will was legally executed and published. The decree recites that at the close of the evidence, and at the request and with the consent of all parties, the court instructed the jury, orally, to ignore the issue whether the paper was the last will and testament of the deceased and confine their verdict to the issue whether the words alleged to have been interpolated were the will of the deceased. No objection is made to the instructions, and the jury by their verdict found only upon the question of the alleged interpolated words. The fact that the witnesses to the will made affidavit as to its execution when it was admitted to

probate did not disqualify them from testifying upon the issue submitted to the jury.

It is insisted that the court had no jurisdiction to entertain a bill to contest the validity of a part of the will. In *Wolf* v. *Bollinger,* 62 Ill. 368, where the same contention was made, it was said: "The power to try and determine whether the writing produced be the will of the testator or not, includes the power to adjudge upon the validity of any part of the instrument as well as the whole."

The decree is sustained by the law and the evidence, and it is affirmed.                              *Decree affirmed.*